FILED
United States Court of Appeals
Tenth Circuit

June 8, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

FRANCISCO MELGAR-CABRERA,

     Defendant - Appellant.

No. 16-2018

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:09-CR-2962-WJ-3)**
_____

Scott M. Davidson, The Appellate Law Office of Scott M. Davidson, Ph.D., Esq., Albuquerque, New Mexico, for Defendant-Appellant.

C. Paige Messec, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **BRISCOE, SEYMOUR,** and **McHUGH**, Circuit Judges.
_____

**SEYMOUR**, Circuit Judge.
_____

This case arises out of two restaurant robberies in 2009 during one of which Francisco Melgar-Cabrera's cohorts shot and killed a waitress. Mr. Melgar-Cabrera was charged with numerous crimes but was not immediately tried because he fled to El

Salvador. He was extradited in 2013 and subsequently convicted and sentenced to life imprisonment pursuant to 18 U.S.C. § 924(j)[1] for causing the death of a person while using a gun to commit a § 924(c) crime of violence. He appeals, contending that Hobbs Act robbery, the underlying crime for which he was charged, is not categorically a crime of violence. Before addressing the Hobbs Act issue, however, we consider an additional matter that neither Mr. Melgar-Cabrera nor the government raised: the fact that in this circuit, § 924(j) has been held to constitute a sentencing enhancement, not a separate crime. *United States v. Battle*, 289 F.3d 661, 666 (10th Cir. 2002) (disagreeing with defendant's "contention that § 924(j) sets forth '*an aggravated crime different from § 924(c),*'" and instead holding "[s]ection 924(j) describes the sentencing factors that must be proved in order to impose a consecutive sentence of death, life imprisonment or a term of years" for someone who causes death while using a firearm to commit a crime of violence). We do so because the El Salvador Supreme Court granted extradition of Mr. Melgar-Cabrera only after holding that he could not be charged with or convicted of a § 924(c) crime. The government subsequently re-indicted Mr. Melgar-Cabrera and charged him with violating § 924(j), and he was convicted of that "crime" rather than a § 924(c) offense. We ordered supplemental briefing on the § 924(j) issue. We affirm.

---

[1] Section 924(j) provides that "[a] person who, in the course of a violation of [§ 924 (c)], causes the death of a person through the use of a firearm, shall . . . if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life." 18 U.S.C. § 924(j).

I.

On June 13, 2009, Mr. Melgar-Cabrera and two cohorts robbed a Lone Star Steakhouse at gunpoint. On June 20, the same three men robbed a Denny's restaurant at gunpoint. During the course of this second robbery, one of the men shot and killed Stephanie Anderson, a waitress at the restaurant. On April 4, 2010, the government indicted Mr. Melgar-Cabrera and his co-defendants. The charges against Mr. Melgar-Cabrera stemming from the Lone Star robbery included a count for conspiracy to commit and committing Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), and a charge for using a gun in relation to that crime of violence in violation of § 924(c). The charges against him stemming from the Denny's robbery also included counts for conspiracy to commit and committing Hobbs Act robbery and for using a gun in relation to that crime. In addition, the government charged Mr. Melgar-Cabrera under § 924(j) for causing the death of Stephanie Anderson while using a gun to commit a crime of violence.

After the robberies, Mr. Melgar-Cabrera fled to El Salvador. The United States requested his extradition on October 2, 2013 for all of the counts listed above. The Supreme Court of Justice of the Republic of El Salvador denied extradition as to both conspiracy counts and both counts involving § 924(c) because it concluded that neither crime was "included in the list of crimes of the Bilateral Extradition Treaty." ROA vol. 1 at 328. Accordingly, the court granted extradition for only two offenses: "committing aggravated murder while using and carrying a firearm during and in relation to a crime of violence and aiding and abetting . . . [and] interfer[ing] with interstate commerce by robbery and violence and aiding and abetting." *Id.* at 342.

3

Once back in the United States, Mr. Melgar-Cabrera filed a motion to dismiss all counts on which the Salvadoran Supreme Court did not grant extradition. The government agreed and filed its own motion to dismiss. The government explained:

2. Pursuant to the Treaty, the Government of the United States has obligations governed by the Rule of Specialty, as set forth in Article IV of the Treaty, to the effect that a defendant shall not be tried or punished for any crime or offense other than those for which extradition is granted.

3. The Salvadoran Supreme Court extradited Defendant on the offenses charged in Count 4 and Counts 3 and 13 of the Second Superseding Indictment which charge Committing Felony Murder While in Violation of 18 U.S.C. §§ 924(j), 1111, and 2; and Interference with Interstate Commerce by Robbery and Violence and Aiding and Abetting in violation of 18 U.S.C. §§ 1951(a) and 2 respectively.

*Id*. at 532-533. The only charges remaining, the government asserted, were two counts of Hobbs Act robbery (one stemming from each robbery) in violation of § 1951(a), and one count "which charges Defendant with Committing Felony Murder While in Violation of 18 U.S.C. §§ 924(j)(1), 1111 and 2." *Id*. at 534. The district court granted the government's motion to dismiss.

Before trial, Mr. Melgar-Cabrera moved to dismiss the felony murder charge, arguing that Hobbs Act robbery could not serve as a predicate "crime of violence" under § 924(c), which is necessary for a violation of § 924(j). The district court denied his motion and Mr. Melgar-Cabrera was convicted on all three counts. On December 1, 2015, the district court sentenced him to life imprisonment on the § 924(j) felony murder count and twenty years for each Hobbs Act robbery count, to run concurrently. He appeals.

II.

Before we turn to the merits of Mr. Melgar-Cabrera's appeal, we address whether § 924(j) is a separate crime in order to clarify the law in this circuit and to avoid confusion in future cases. We begin with 18 U.S.C. § 924(c)(1), which sets forth a discrete crime for using or carrying a firearm in furtherance of a crime of violence or drug trafficking crime. *See Abbott v. United States*, 562 U.S. 8, 12 (2010).

Confusingly, Congress placed this "discrete crime" in 18 U.S.C. § 924, a statutory section labeled "Penalties." *See* Gun Control Act of 1968, Pub. L. No. 90-618, § 101, 82 Stat. 1213. In *United States v. Sudduth*, 330 F. Supp. 285, 289 (D. Colo. 1971), one of the earliest cases discussing § 924(c), the district court noticed this oddity and held that § 924(c) did not create a discrete crime, stating that "[w]hen Congress devoted several pages to phrasing Sec. 922 which creates the unlawful acts, it is difficult to accept an argument that Congress impliedly intended to create an offense under the section of the Act headed 'Penalties.'" We reversed that conclusion in *United States v. Sudduth*, 457 F.2d 1198, 1201 (10th Cir. 1972), stating that "[a]n examination of the events surrounding the enactment of section 924(c) and an evaluation of its wording leads us to the conclusion that it was intended to create a separate crime. It is obvious, however, that the matter is by no means free of doubt . . . ." In its first case interpreting § 924(c), the Supreme Court approvingly cited our *Sudduth* opinion and declared that § 924(c) "creates an offense distinct from the underlying federal felony," before holding that a defendant could not be punished under both § 924(c)(1) and the enhanced punishment provision for

5

bank robbery under § 2113(d). *Simpson v. United States*, 435 U.S. 6, 10-13 (1978), *superseded by statute*, Comprehensive Crime Control Act of 1984, Pub L. 98-473, § 1005(a), 98 Stat. 2138-39, *as recognized in United States v. Gonzales*, 520 U.S. 1, 10 (1997). The Court thus ended any debate as to whether Congress intended § 924(c) to be a discrete crime or a sentencing enhancement.

But another provision under the "Penalties" subheading is § 924(j), which is at the center of this case. It provides that "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall . . . if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . ." 18 U.S.C. § 924(j). Notably, we held in *Battle*, 289 F.3d at 666, that § 924(j) is not a discrete crime but is instead a sentencing enhancement. One other circuit has agreed with this conclusion. *See United States v. Allen*, 247 F.3d 741, 769 (8th Cir. 2002) ("§ 924(j) is fairly interpreted as an additional aggravating punishment for the scheme already set out in § 924(c)"), *vacated on other grounds*, 536 U.S. 953 (2002). Other circuits, however, have held or strongly insinuated that § 924(j) is a discrete crime. *See United States v. Berrios*, 676 F.3d 118, 142 n.17 (3d Cir. 2012) (stating evidence "strongly suggest[s] that Congress intended" § 924(j) to be considered discrete crime but determination of issue not necessary to outcome of case); *see also United States v. Julian*, 633 F.3d 1250, 1253 (11th Cir. 2011) ("The facts that the government must prove for a criminal to receive a sentence—including a potential sentence of death—under section § 924(j) comprise elements, not sentencing factors.");

6

*United States v. Young*, 561 F. App'x. 85, 94 (2d Cir. 2014) (unpublished) (observing that § 924(j) "likely indicates that it is a stand-alone offense").

Although Mr. Melgar-Cabrera was charged with and convicted of violating § 924(j), he never made an objection, either at trial or on appeal, concerning § 924(j)'s status under *Battle* as a sentencing factor rather than a discrete crime. "While this ordinarily constitutes a waiver of the issue . . . our case law unquestionably recognizes our inherent power to raise an issue *sua sponte* as plain error under circumstances strongly implying a fundamental defect or error of sufficient magnitude to undermine our confidence that justice was served." *United States v. Santistevan*, 39 F.3d 250, 256 (10th Cir. 1994); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). A defendant being convicted of a crime that is not a crime certainly qualifies as "circumstances strongly implying a fundamental defect." *Santistevan*, 39 F.3d at 256. Thus, we exercise our discretion to review for plain error. Plain error occurs "when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015), *abrogated on other grounds by Beckles v. United States*, 137 S. Ct. 886 (2017). The government has convinced us there was no error here.

*Battle* rested on a shaky foundation from the beginning. There, Mr. Battle was charged with one count of Hobbs Act robbery and one count of causing the death of a person with a firearm during the commission of the robbery, in violation of § 924(c) and

7

§ 924(j). *Battle*, 289 F.3d at 663. The court sentenced Mr. Battle to 240 months imprisonment for the Hobbs Act violation and life imprisonment for the violation of § 924(c) and (j), to be served consecutively. *Id.* A district court generally has discretion to impose consecutive sentences, *see* 18 U.S.C. § 3584, but normally it must state its reasons for doing so, *see United States v. Rose*, 185 F.3d 1108, 1112-13 (10th Cir. 1999). In *Battle*, however, the district court had not done so. We noted that we were not compelled to overturn the district court's decision because § 924(c)(1)(D)(ii) specifically forbids the imposition of concurrent sentences for § 924(c) violations and the underlying crime of violence. *Battle*, 289 F.3d at 665. Although Mr. Battle argued that the district court had erred when it imposed consecutive sentences without stating its reasons for doing so because § 924(j) is a discrete crime from § 924(c), we rejected his argument by concluding that § 924(j) was only a sentencing enhancement. *Id.* at 666. We held accordingly that "§ 924(c) unambiguously mandates the imposition of a consecutive sentence 'in addition to' the punishment ordered for the use of a firearm during the commission of a crime of violence where the evidence demonstrates the existence of the aggravating sentencing factors set forth in § 924(j)." *Id.* at 669.

But as the government pointed out in its supplemental brief, Aple. Supp. Br. at 1, 10, *Battle* never discussed, or even cited, the recently decided landmark Supreme Court decision of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 491. Thereafter, in *Ring v. Arizona*, 536 U.S. 584 (2002), the Court addressed Arizona's

8

sentencing scheme, which allowed a judge to increase a defendant's maximum punishment from life imprisonment to a death sentence by finding an aggravating factor beyond a reasonable doubt. *Id*. at 598. An earlier Supreme Court case had held Arizona's sentencing scheme constitutional after concluding that the additional facts found by the judge qualified as sentencing considerations and not "element[s] of the offense of capital murder." *Walton v. Arizona*, 497 U.S. 639, 649 (1990). *Ring* held *Walton* to be irreconcilable with *Apprendi* and "overrule[d] *Walton* to the extent that it allow[ed] a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." 536 U.S. at 609. As the Court succinctly recognized in *Alleyne v. United States*, 570 U.S. 99, 116 (2013), an "aggravating fact [that] produce[s] a higher range . . . conclusively indicates that the fact is an element of a distinct and aggravated crime."

The Eleventh Circuit recognized these principles in *United States v. Julian*, 663 F.3d at 1255, when it held that § 924(j) is a discrete crime. It noted that "[t]he distinction drawn between elements and sentencing factors in decisions that have interpreted the Fifth and Sixth Amendments also supports our interpretation that section 924(j) defines elements of a separate offense." The court also observed that "the Sixth Amendment prohibits imposition of a sentence greater than 'the maximum [a criminal] would receive if punished according to the facts reflected in the jury verdict alone.' *Apprendi v. New Jersey*, 530 U.S. 466, 483 (2000)," and that "[c]apital crimes are no different. *See Ring v. Arizona*, 536 U.S. 584, 589 (2002)." *Id.* It then pointed out that

9

[s]ection 924(j) increases the maximum penalty a defendant may receive beyond the sentence applicable to a defendant found to have violated only the elements listed in section 924(c). Life imprisonment is the maximum sentence a defendant may receive under section 924(c) for using a firearm in a crime of violence or drug trafficking offense, *United States v. Woodruff*, 296 F.3d 1041, 1050 (11th Cir.2002), but a defendant may receive the death penalty under section 924(j). . . . *The United States appreciated these constitutional implications of the distinction between elements and sentencing factors when it prosecuted Julian. The United States treated as elements all of the facts necessary to convict Julian under section 924(j) because it charged these facts in the indictment and proved them to a jury beyond a reasonable doubt.*

*Id.* (emphasis added).[2]

The cases cited above persuade us we erred when we held in *Battle* that § 924(j) was merely a sentencing enhancement rather that a discrete crime.[3]

### III.

We now turn to the merits of this case. Mr. Melgar-Cabrera contends that Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3) and his conviction

---

[2] Fortunately, the government in the present case treated § 924(j) as a discrete crime as well when it charged the relevant facts in the indictment as elements of a crime. *See* ROA vol. 1 at 33-34. In addition, the district court instructed the jury that the government was required to prove those elements beyond a reasonable doubt. *Compare* District Court's Jury Instructions on § 924(j), ROA vol. 1 at 971, *with* Tenth Circuit Criminal Pattern Jury Instruction 2.45 (the pattern instructions for a violation of § 924(c)).

[3] "A panel decision may overrule a point of law established by a prior panel through an en banc footnote by obtaining authorization from all active judges on the court." *United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007), *overruled in part on other grounds by Irizarry v. United States*, 553 U.S. 708, 713 n.1 (2008) (citing *United States v. Meyers,* 200 F.3d 715, 721 n. 3 (10th Cir.2000)). This opinion has been circulated to all active members of this court, and it is our unanimous decision to overturn the conclusion articulated in *Battle* that 18 U.S.C. § 924(j) is a sentencing factor rather than a discrete crime.

should therefore be vacated.  He argues that Hobbs Act robbery fails to categorically

constitute a crime of violence under what is sometimes called the statute's elements or

force clause, § 924(c)(3)(A).[4]  We review de novo the district court's interpretation of

§ 924(c) and its legal conclusion that a particular offense constitutes a crime of violence.

*United States v. Serafin*, 562 F.3d 1105, 1107 (10th Cir. 2009).

> A "crime of violence" is defined as "an offense that is a felony" and
>
> (A) has as an element the use, attempted use, or threatened use of physical
> force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against
> the person or property of another may be used in the course of committing
> the offense.

§ 924(c)(3).  To determine whether a predicate crime constitutes a crime of

violence under § 924(c), we employ the categorical approach.  *Serafin*, 562 F.3d at

1107.

> Under the categorical approach, we look "only to the fact of conviction and
> the statutory definition of the prior offense, and do not generally consider
> the particular facts disclosed by the record of conviction.  That is, we
> consider whether the elements of the offense are of the type that would
> justify its inclusion . . . [as a crime of violence], without inquiring into the
> specific conduct of this particular offender."

*Id.* at 1107-08 (quoting *United States v. West*, 550 F.3d 952, 957 (10th Cir. 2008)

(citations and quotations omitted)).  In applying the categorical approach, we

---

[4] Mr. Melgar-Cabrera alternatively argues that the statute's residual clause,
§ 924(c)(3)(B), is void for vagueness under the Supreme Court's decision in *Johnson v.
United States* (*Johnson II*), 135 S. Ct. 2551 (2015).  We recently held that the residual
clause in § 924(c)(3)(B) is indeed unconstitutionally vague.  *See United States v. Salas*,
No. 16-2170, slip op. at 11, 2018 WL 2074547 (10th Cir. May 4, 2018).  That outcome
does not affect Mr. Melgar-Cabrera's appeal given our conclusion that Hobbs Act
robbery is a crime of violence under the elements clause of § 924(c)(3).

follow the Supreme Court's instruction that there must be "a realistic probability, not a theoretical possibility," that the statute at issue could be applied to conduct that does not constitute a crime of violence. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

The "crime of violence" of which Mr. Melgar-Cabrera was convicted was Hobbs Act robbery, codified in 18 U.S.C. § 1951. Section 1951(a) makes it a crime to "obstruct[], delay[], or affect[] commerce . . . by robbery . . . ." Section 1951(b)(1) defines the term "robbery" as follows:

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

Mr. Melgar-Cabrera makes two arguments for why Hobbs Act robbery fails to constitute a crime of violence under § 924(c)(3)(A). First, he asserts that the term "force" as used in the definition of robbery in 18 U.S.C. § 1951(b)(1) does not require violent force, whereas "physical force" as used in § 924(c)(3)(A) does.[5] Second, he argues that unlawfully taking a victim's property against his or her will "by means of . . . fear of

---

[5] The government contends that Mr. Melgar-Cabrera did not preserve this argument and that we should review only for plain error. Because we conclude that the district court did not err, we need not determine whether this argument was properly preserved. *Cf. United States v. Flonnory*, 630 F.3d 1280, 1285 (10th Cir. 2011) ("There is substantial merit to the government's argument; but because we decide that the court's response was not an abuse of discretion, we need not decide whether the issue was adequately preserved below.").

injury" does not require the attempted or threatened use of physical force.  We address each argument in turn.

## A.  "Force" in § 924(c)(3)(A)

Before we can address whether Hobbs Act robbery requires violent force, we must first determine whether § 924(c)(3)(A) requires violent force.  There are several federal statutes that employ the same language as § 924(c)'s force clause.  *See, e.g.*, 18 U.S.C. § 924(e)(2)(B)(i) ("the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ."); 18 U.S.C. § 16(a) ("[T]he term 'crime of violence' means—(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ."); 18 U.S.C. § 921(a)(33)(A) ("The term 'misdemeanor crime of domestic violence' means an offense that—(i) is a misdemeanor under Federal, State, or Tribal law; and (ii) has, as an element, the use or attempted use of physical force . . . .").  All of these provisions include the term "physical force," and one might assume that the term means the same thing in each instance.  But that assumption would be incorrect.

In 2010, the Supreme Court was tasked with determining the meaning of the words "physical force" as used in 18 U.S.C. § 924(e)(2)(B)(i).  *See Johnson v. United States* (*Johnson I*), 559 U.S. 133, 140 (2010).  The Court noted that the word "force" has always had a specialized meaning within legal parlance: "its use in describing one of the elements of the common-law crime of battery, which consisted of the intentional application of unlawful force against the person of another."  *Id.* at 139 (citing 2 W.

13

LaFave & A. Scott, Substantive Criminal Law § 7.15(a), p. 301 (1986 and Supp.2003)). But instead of prescribing the common-law definition to § 924(e)'s use of the word "force," the Court elected to use the ordinary meaning of the word, concluding that "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140 (citing *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003)).

The Court listed several reasons for coming to this conclusion but the main reason was that the word "force" was being used in the statutory definition of "violent" felony. "Even by itself," the Court noted, "the word 'violent' in § 924(e)(2)(B) connotes a substantial degree of force." *Id.* The Court further stated that "[w]hen the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer." *Id.* Thus, as used in § 924(e)(2)(B)(i), the word "force" means "violent force."

The Court faced a similar issue five years later in *United States v. Castleman*, 134 S. Ct. 1405 (2014), but came to a different conclusion. *Castleman* concerned the meaning of "physical force" as used in § 921(a)(33)(A)'s definition of "misdemeanor crime of domestic violence." In 2008, Mr. Castleman was caught selling firearms on the black market and was subsequently indicted under 18 U.S.C. § 922(g)(9), which makes it a crime for a person who has been convicted of a misdemeanor crime of domestic violence to ship, possess, or receive firearms affecting interstate commerce. A misdemeanor crime of domestic violence is defined as an offense that

> has, as an element, the use or attempted use of physical force, or the
> threatened use of a deadly weapon, committed by a current or former
> spouse, parent, or guardian of the victim, by a person with whom the victim

14

shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A).

The government alleged that Mr. Castleman's misdemeanor crime of domestic violence (i.e., his predicate crime for a conviction under § 922(g)) was a conviction in 2001 for "'intentionally or knowingly caus[ing] bodily injury to' the mother of his child, in violation of Tenn. Code Ann. § 39-13-111(b) (Supp. 2002)." *Castleman*, at 1409. "Castleman moved to dismiss the § 922(g)(9) charges, arguing that his Tennessee conviction did not qualify as a 'misdemeanor crime of domestic violence' because it did not 'ha[ve], as an element, the use . . . of physical force,' § 921(a)(33)(A)(ii)." *Id.* The district court agreed with Mr. Castleman and the Sixth Circuit affirmed. *Id.*

The Supreme Court granted certiorari and reversed. In so doing, the Court applied the exact argument that it rejected in *Johnson I*, concluding that Congress "incorporated the common-law meaning of 'force'—namely, offensive touching—in § 921(a)(33)(A)'s definition of a 'misdemeanor crime of domestic violence.'" *Id.* at 1410. It distinguished *Johnson I* as follows:

> In *Johnson,* we considered whether a battery conviction was a "violent felony" under the Armed Career Criminal Act (ACCA), § 924(e)(1). As here, ACCA defines such a crime as one that "has as an element the use . . . of physical force," § 924(e)(2)(B)(i). We began by observing that at common law, the element of force in the crime of battery was "satisfied by even the slightest offensive touching." 559 U.S., at 139, 130 S. Ct. 1265 (citing 3 W. Blackstone, Commentaries on the Laws of England 120 (1768)). And we recognized the general rule that "a common-law term of art should be given its established common-law meaning," except "where that meaning does not fit." 559 U.S., at 139, 130 S. Ct. 1265. We declined to read the common-law meaning of "force" into ACCA's definition of a

15

"violent felony," because we found it a "comical misfit with the defined term." *Id.,* at 145, 130 S. Ct. 1265; see *United States v. Stevens,* 559 U.S. 460, 474, 130 S. Ct. 1577, 176 L.Ed.2d 435 (2010) ("[A]n unclear definitional phrase may take meaning from the term to be defined"). In defining a "'*violent* felony,'" we held, "the phrase 'physical force'" must "mea[n] *violent* force." *Johnson,* 559 U.S., at 140, 130 S. Ct. 1265. But here, the common-law meaning of "force" fits perfectly: The very reasons we gave for rejecting that meaning in defining a "violent felony" are reasons to embrace it in defining a "misdemeanor crime of domestic violence."

*Id.* As the Court explained, one reason for its departure from *Johnson I* was that while "the word 'violent' or 'violence' standing alone 'connotes a substantial degree of force,' that is not true of 'domestic violence,'" which "is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context." *Id.* at 1411 (internal citations omitted) (quoting *Johnson I*, 559 U.S. at 140).

Turning to the Tennessee statute, the Court held that it was divisible, applied the modified categorical approach, and determined that Mr. Castleman pled guilty to having "intentionally or knowingly cause[d] bodily injury to the mother of his child." *Id.* at 1414 (internal quotations omitted). After reasoning that "[u]nder Tennessee law, 'bodily injury' is a broad term: It 'includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty,'" *id.* (quoting Tenn. Code Ann. § 39–11–106(a)(2) (1997)), the Court stated that "[i]t is impossible to cause bodily injury without applying force in the common-law sense."[6] *Id.* at 1415. Accordingly, the Court held that Mr. Castleman's

---

[6] The Court noted that Justice Scalia, in his concurrence, believed that the forms of injury listed in the relevant Tennessee statute "necessitate[d] violent force, under *Johnson's* definition of that phrase." *Id.* In response, the majority stated, "whether or not

16

conviction under Tenn. Code Ann. § 39-11-106(a)(2) did qualify as a misdemeanor crime of domestic violence under 18 U.S.C. § 922(g)(9). *Id.* at 1416.

*Castleman* and *Johnson I* demonstrate that before a court can determine whether a predicate crime falls within a particular statute's elements clause, it must first determine whether the statute's use of the word "force" requires "violent force," as *Johnson I* determined was the case for § 924(e)(2)(B)(i), or instead whether it requires the common-law meaning of force, as *Castleman* determined was the situation in § 921(a)(33)(A). The statute at issue in this case, § 924(c)(3)(A), defines the term "crime of violence" as "an offense that is a felony" and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." The Supreme Court has not yet defined the word "force" in § 924(c)(3)(A), and, surprisingly, neither have we. We turn to that question.

We conclude that the word "force" as used in § 924(c)(3)(A) means "violent force," just as the Court held in *Johnson I* in regard to § 924(e)(2)(B)(i). The similarities between the two statutes are obvious. Both contain a form of the word "violent" (i.e., "crime of violence" and "violent felony"), and the Court has determined that "the word 'violent' . . . connotes a substantial degree of force." *Johnson I*, 559 U.S. at 140. Moreover, the Court observed that "[w]hen the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer." *Id.* While the word felony is not part of the phrase "crime of violence," it is a necessary element of its

that is so—a question we do not decide—these forms of injury do necessitate force in the common-law sense." *Id.*

17

definition. *See* § 924(c)(3) ("the term 'crime of violence' means an offense that is a *felony* and . . . ." (emphasis added)). Thus, for virtually the same reasons the Court held that physical force as used in § 924(e)(2)(B)(i) means violent force instead of the common-law meaning of force, we too hold that physical force as used in § 924(c)(3)(A) "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140.

## B.  Does Hobbs Act Robbery Require Violent Force?

Mr. Melgar-Cabrera contends that Hobbs Act robbery can be committed with mere offensive touching, a degree of force below that which is required of § 924(c), and that it therefore does not qualify as a "crime of violence" under § 924(c)(3)(A). We disagree. While Mr. Melgar-Cabrera is correct in his assertion that Hobbs Act robbery is defined as common-law robbery that affects interstate commerce, *see United States v. Peterson*, 236 F.3d 848, 851 (7th Cir. 2001), *abrogated on other grounds* by *Taylor v. United States*, 136 S. Ct. 2074 (2016); *United States v. Harrington*, 108 F.3d 1460, 1471 (D.C. Cir. 1997); *United States v. Nedley*, 255 F.2d 350, 357 (3d Cir. 1958), he is incorrect in his assertion that common-law robbery can be committed without violent force. *See United States v. Harris*, 844 F.3d 1260, 1268 (10th Cir. 2017). Offensive touching has never sufficed to satisfy the force element of robbery.

> On the contrary, the force element of robbery has traditionally been identified with strong or violent force. *See* 3 Edward Coke, *Institutes* *68 (defining robbery as "a felony by the common law, committed by a violent assault, upon the person of another, by putting him in fear, and taking from his person his money or other goods of any value whatsoever"); 4 William Blackstone, *Commentaries* *241 (defining robbery as "the felonious and forcible taking, from the person of another, of goods or money to any value,

by violence or putting him in fear"); *see also, e.g.*, *McCloskey v. People,* 5 Parker's Crim. 299, 307 (N.Y.Sup.Ct.1862) ("The property must be taken by violence to the person, which means more than a simple assault and battery."). Nor has this common law meaning changed in the intervening centuries. *See* Black's 1443 (9th ed.2009) (defining robbery as "[t]he illegal taking of property from the person of another, or in the person's presence, by violence or intimidation"); *id.* at 717 (defining "physical force" as "[f]orce consisting in a physical act, esp[ecially] a violent act directed against a robbery victim.").

*United States v. Pena*, 161 F. Supp. 3d 268, 276 (S.D.N.Y. 2016).

We faced a similar issue in *Harris*, 844 F.3d at 1262, when we had to determine whether Colorado's robbery statute (a statute that tracked the elements of common-law robbery) qualified as a "violent felony" under § 924(e)(2)(B)(i). We discussed how the Colorado Supreme Court had held that common-law robbery required a taking by "violence or intimidation." *Id.* at 1266 (quoting *People v. Borghesi*, 66 P.3d 93, 99 (Colo. 2003)). And we concluded by stating that the word "force" in Colorado's robbery statute "categorically matches the definition of 'physical force' assigned by the Supreme Court in *Johnson I*." *Id.* at 1268. Thus, *Harris* stands for the proposition that the force element in common-law robbery statutes (e.g., the Hobbs Act) can only be satisfied by violent force. Accordingly, we reject Mr. Melgar-Cabrera's first argument.

## C. "Fear of Injury" in Hobbs Act Robbery

Mr. Melgar-Cabrera's second argument, to which he devotes only one paragraph in his brief, is that "Hobbs Act robbery can be committed by causing the victim to part with his property due to 'fear of injury'" and robbery by such means does not require as an element the use or attempted use of violent physical force. Aplt. Br. at 15. For this argument, Mr. Melgar-Cabrera relies on *United States v. Perez-Vargas*, 414 F.3d 1282

19

(10th Cir. 2005), for the proposition that placing a victim in fear of injury by threatening the indirect application of physical force is not sufficient to constitute the threatened use of physical force because it "focuses on the result of a defendant's conduct, *i.e.*, bodily injury," *id.* at 1285, and not the means of inflicting it.

As we recognized in *United States v. Ontiveros*, 875 F.3d 533, 536 (10th Cir. 2017), the Supreme Court abrogated *Perez-Vargas* "[to] the extent that [it] holds that indirect force is not an application of 'physical force.'" *Id.* at 538. We reasoned that *Castleman* had rejected the logic of *Perez-Vargas* when it stated the following:

> [U]se of force ... is not the act of sprinkling the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [petitioner's] logic, after all, one could say that pulling the trigger on a gun is not a use of force because it is the bullet, not the trigger, that actually strikes the victim.

*Ontiveros*, 875 F.3d at 537 (quoting *Castleman*, 134 S. Ct. at 1415, (external quotation marks and brackets omitted)). We noted that "[a]lmost every circuit that has looked at this issue has determined that *Castleman's* logic is applicable to the 'physical force' requirement as used in a felony crime of violence." *Id.* (citing cases). We found one case in particular extremely persuasive and quoted its reasoning at length:

> To be sure, *Castleman* did not construe ACCA's force clause, and it expressly reserved the question of whether the causation of "bodily injury," a term defined broadly under Tennessee law, would "necessitate violent force under *Johnson's* definition of that phrase" in ACCA. 134 S. Ct. at 1414. But the Court's formal reservation does not foreclose application of the relevant aspects of its reasoning, which did not rest on any distinction between § 922(g)(9) and ACCA's force clause, § 924(e)(2)(B)(i). Indeed, the Court relied significantly on *Johnson* in rejecting a proffered limitation

20

on the term "physical force." *See Castleman*, 134 S. Ct. at 1414 ("[A]s we explained in *Johnson*, 'physical force' is simply 'force exerted by and though concrete bodies'"); *cf. id.* at 1416–17 (Scalia, J., concurring in part and concurring in the judgment) ("[I]t is impossible to cause bodily injury without using force 'capable of' producing that result"). Accordingly, by applying the combination of *Johnson* and *Castleman*, we conclude that ACCA's phrase "use of physical force" includes force applied directly or indirectly.

*Id.* at 537-38 (quoting *United States v. Reid*, 861 F.3d 523, 528-29 (4th Cir. 2017)). We concluded by stating, "[w]e agree with the Fourth Circuit and hold that *Castleman's* logic applies to 'physical force' in the context of violent felonies." *Id.* at 538.

Because the terms "physical force" as used in both § 924(c) and § 924(e)(2)(B)(i) are identical, we apply *Ontiveros* to this case. To the extent Mr. Melgar-Cabrera contends that committing Hobbs Act robbery by putting someone in fear of injury does not necessarily constitute the threatened use of physical force because it can be done through indirect force, *Ontiveros* has foreclosed his argument. *See United States v. Hill*, 832 F.3d 135, 140-44 (7th Cir. 2016) (applying *Castleman* to § 924(c) and holding that placing someone in "fear of injury" under the Hobbs Act necessarily constitutes the threatened use of physical force); *see also United States v. Kendall*, 2017 WL 6273210, at *5-6; 876 F.3d 1264, 1270-71 (10th Cir. 2017) (applying *Ontiveros* to the definition of crime of violence under USSG § 4B1.2).[7]

---

[7] We note that one of our recent cases seems to be at odds with our conclusion here. In *United States v. O'Connor*, 874 F.3d 1147, 1158 (10th Cir. 2017), we held that Hobbs Act robbery was not a "crime of violence" under U.S.S.G. § 4B1.2(a)(1). But while § 4B1.2(a)(1) has language similar to § 924(c)(3)(A), it is not identical. *Compare* U.S.S.G. § 4B1.2(a)(1) (stating that an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another"), *with* § 924(c)(3)(A) (stating that an offense is a crime of violence if it "has as an element

21

Accordingly, we affirm.

---

the use, attempted use, or threatened use of physical force against the person or *property* of another" (emphasis added)).  *O'Connor* pointed out this distinction in its holding and limited it accordingly: "There is nothing incongruous about holding that Hobbs Act robbery is a crime of violence for purposes of 18 U.S.C. § 924(c)(3)(A), which includes force against a person or property, but not for purposes of U.S.S.G. § 4B1.2(a)(1), which is limited to force against a person."  *Id.* (citing *United States v. Andino-Ortega*, 608 F.3d 305, 310-12 (5th Cir. 2010)).  Thus, we see no inconsistencies between our opinion here and *O'Connor*.