**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 15-2146

MANUEL MALDONADO-PALMA,

    Defendant - Appellant.

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:15-CR-01205-PR-1)**
_____

Caleb Kruckenberg, Assistant Federal Public Defender, Las Cruces, New Mexico, for Defendant-Appellant.

C. Paige Messec, Assistant United States Attorney (Damon P. Martinez, United States Attorney, and David N. Williams, Assistant United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **MATHESON**, **SEYMOUR**, and **BACHARACH**, Circuit Judges.
_____

**SEYMOUR**, Circuit Judge.
_____

Defendant Manuel Maldonado-Palma pled guilty to one count of illegally reentering or remaining in the United States after having been removed, excluded, or deported, in violation of 8 U.S.C. § 1326(a), (b). Before sentencing, Mr. Maldonado

objected to the recommendation in the Presentence Report (PSR) that his guideline base offense level be increased to reflect that he had a prior conviction for a crime of violence. The district court overruled his objection and, calculating the guideline range to be 77-96 months, sentenced Mr. Maldonado to 77 months in prison. On appeal, Mr. Maldonado asserts the district court miscalculated the guidelines range, making his sentence procedurally unreasonable, because his prior New Mexico conviction for aggravated assault is not a "crime of violence" under § 2L1.2(b)(1)(A)(ii) of the U.S. Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2014). We affirm.

# I

In October 2002, Mr. Maldonado, a citizen of Mexico, was convicted in New Mexico state court of aggravated assault. He was subsequently removed from the United States. In March 2015, U.S. Border Patrol agents in New Mexico encountered Mr. Maldonado attempting to hide in the desert. He admitted that he was a citizen of Mexico and did not have authorization to enter or remain in the United States. Mr. Maldonado was taken into custody and subsequently pled guilty to a one-count Information charging him with illegal reentry.

Under the sentencing guidelines, the base offense level for unlawfully entering or remaining in the United States is 8. U.S.S.G. § 2L1.2(a). If, however, "the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence," then the base

2

offense level is increased by either 12 or 16 levels, depending on whether the defendant receives any criminal history points. *Id.* § 2L1.2(b)(1)(A)(ii). The probation officer preparing Mr. Maldonado's PSR characterized his New Mexico conviction for aggravated assault as a "crime of violence" and concluded that his base offense level should be increased by 16 levels. After adjusting downward 3 levels for acceptance of responsibility, the probation officer concluded that Mr. Maldonado's total offense level should be 21. Mr. Maldonado objected to the 16-level enhancement, arguing that his prior conviction did not constitute a crime of violence. The district court disagreed and ruled that the 16-level enhancement was correct. Mr. Maldonado appeals his sentence, arguing that the district court erred in imposing any enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii).[1]

## II

We generally review claims that a sentence is procedurally unreasonable under the abuse of discretion standard of review. *United States v. Halliday*, 665 F.3d 1219, 1222 (10th Cir. 2011). However, whether Mr. Maldonado's conviction for aggravated assault constitutes a "crime of violence" for purposes of § 2L1.2(b)(1)(A)(ii) is a question of statutory interpretation that we review de novo.

---

[1] In addition to challenging the enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii), Mr. Maldonado argues that an alternative 8-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C) for an aggravated felony would also be improper. We need not reach that issue because, as we explain below, we conclude that the 16-level enhancement under § 2L1.2(b)(1)(A)(ii) was proper.

3

*United States v. Castillo*, 811 F.3d 342, 345 (10th Cir. 2015). "In interpreting a guideline, we look at the language in the guideline itself, as well as the interpretative and explanatory commentary to the guideline provided by the Sentencing Commission." *United States v. Reyes-Alfonso*, 653 F.3d 1137, 1141 (10th Cir. 2011) (internal quotation marks omitted). The commentary to § 2L1.2(b)(1) defines a "crime of violence" as

> any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, *aggravated assault*, forcible sex offenses . . . , statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, *or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another*.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (emphasis added).

Mr. Maldonado's conviction can thus constitute a crime of violence under either the "enumerated clause"—by matching the enumerated generic offense of aggravated assault—or the "elements clause"—by having as an element the use, attempted use, or threatened use of physical force against the person of another. Mr. Maldonado contends his conviction does not qualify as a crime of violence under either the enumerated or the elements clause of § 2L1.2.

To determine whether Mr. Maldonado's prior New Mexico conviction qualifies as a crime of violence under the enumerated clause, we must compare the New Mexico offense of conviction to the generic offense of "aggravated assault." *See Taylor v. United States*, 495 U.S. 575, 598 (1990) (analyzing similar enumerated clause in the Armed Career Criminal Act (ACCA)); *United States v. Ventura-Perez*,

4

666 F.3d 670, 673 (10th Cir. 2012) (stating that "[w]hen determining whether a prior conviction was for a crime of violence under USSG § 2L1.2, this circuit follows the same approach set forth by the Supreme Court for determining whether a prior conviction was for a violent felony under the Armed Career Criminal Act"). The elements of the New Mexico offense must be the same as or narrower than the elements of the generic offense. *See Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016) (discussing enumerated clause in ACCA). In comparing the two crimes, we follow the categorical approach, which requires us to "focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic [aggravated assault], while ignoring the particular facts of the case." *Id.* at 2248.

New Mexico's aggravated assault statute is a divisible statute because it sets out alternative elements for aggravated assault in three subsections. *See* N.M. Stat. Ann. § 30-3-2(A)-(C);[2] *State v. Armijo*, 104 P.3d 1114, 1120 (N.M. Ct. App. 2004)

---

[2] New Mexico's aggravated assault statute provides:

Aggravated assault consists of either:

A. unlawfully assaulting or striking at another with a deadly weapon;

B. committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or

C. willfully and intentionally assaulting another with intent to commit any felony.

(continued)

(describing aggravated assault as "a compound offense that has three alternate ways of being charged").[3]  When faced with a divisible statute, we may use the modified categorical approach, which permits us to "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.  [We] can then compare that crime, as the categorical approach commands, with the relevant generic offense."  *Mathis*, 136 S. Ct. at 2249 (internal citations omitted).  Mr. Maldonado concedes that he was convicted under subsection (A) of the aggravated assault statute, which proscribes "unlawfully assaulting or striking at another with a deadly weapon," N.M. Stat. Ann. § 30-3-2(A).  *See Ventura-Perez*, 666 F.3d at 676 (holding defense counsel's admissions will suffice to satisfy the modified categorical approach because "[c]ourts could not function properly if concessions by counsel cannot be relied upon").

Mr. Maldonado contends, and the government agrees, that the New Mexico offense of aggravated assault with a deadly weapon encompasses more conduct than does the generic offense of aggravated assault, and that the New Mexico offense is not categorically a crime of violence under § 2L1.2's enumerated clause.  *See*

Whoever commits aggravated assault is guilty of a fourth degree felony.

N.M. Stat. Ann. § 30-3-2.

[3] A divisible statute is the "kind of statute [that] sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile."  *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).

6

*Mathis*, 136 S. Ct. at 2251 (holding that if the state offense "cover[s] a greater swath of conduct" than does the enumerated generic offense, enhancement based on the enumerated clause is improper). We therefore turn to the "elements clause" of § 2L1.2 to determine whether the New Mexico offense has as an element the use, attempted use, or threatened use of physical force against the person of another.

To determine whether aggravated assault with a deadly weapon in New Mexico satisfies § 2L1.2's elements clause, we once again apply the categorical approach and examine only the elements of the offense, without regard to Mr. Maldonado's specific conduct. *United States v. Zuniga-Soto*, 527 F.3d 1110, 1118 (10th Cir. 2008). Thus, we "consider only whether the statute of conviction required proof of the use, threatened use, or attempted use of physical force." *Id.* at 1120. In this context, "physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting the phrase "has as an element the use . . . of physical force against the person of another" in the ACCA); *see also United States v. Ramon Silva*, 608 F.3d 663, 671 (10th Cir. 2010) (noting similarity of language in elements clause of ACCA and § 2L1.2 and approving use of precedents under one as guidance in interpreting the other).

Mr. Maldonado argues that aggravated assault with a deadly weapon does not require proof of the use, threatened use, or attempted use of physical force because there are multiple means of committing the element of "unlawful[] assault" contained

7

in N.M. Stat. Ann. § 30-3-2(A) and not all of them involve physical force.[4]

Mr. Maldonado points to N.M. Stat. Ann. § 30-3-1, which describes three methods of committing simple assault.[5] In *Ramon Silva*, 608 F.3d at 674, we examined whether aggravated assault with a deadly weapon in New Mexico was a "violent crime" under a similar elements clause in the ACCA and concluded that it was.

Mr. Maldonado contends that *Ramon Silva* is not dispositive, though, because it considered only whether aggravated assault with a deadly weapon is a violent felony when the method of committing the underlying assault is by "any unlawful act, threat or menacing conduct that causes another person to reasonably believe that he is in danger of receiving an immediate battery," which is proscribed in N.M. Stat.

---

[4] In *Mathis*, 136 S. Ct. at 2248-50, the Supreme Court stressed the need to distinguish between alternative "elements" in a statute of conviction and alternative "means" of fulfilling a single element. We note that "unlawfully assaulting" and "striking at" another in N.M. Stat. Ann. § 30-3-2(A) are not alternative elements of aggravated assault with a deadly weapon, but simply alternative means of committing the element of assault. This conclusion is supported by the committee commentary to UJI 14-304 NMRA, which states that "the concept of 'striking at' [is] included within the concept of 'assault by attempted battery,'" which is one of the means of committing assault set forth in N.M. Stat. Ann. § 30-3-1.

[5] New Mexico's assault statute defines assault as:

> A. an attempt to commit a battery upon the person of another;
>
> B. any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or
>
> C. the use of insulting language toward another impugning his honor, delicacy or reputation.

N.M. Stat. Ann. § 30-3-1.

8

Ann. § 30-3-1(B).  *See Ramon Silva*, 608 F.3d at 670 ("In light of Silva's argument, we focus our analysis on 'apprehension causing' aggravated assault.").  Mr. Maldonado focuses instead on N.M. Stat. Ann. § 30-3-1(C), which proscribes "the use of insulting language toward another impugning his honor, delicacy or reputation."

Mr. Maldonado contends that assaulting someone by using insulting language while possessing a deadly weapon would qualify as aggravated assault under N.M. Stat. Ann. § 30-3-2(A),[6] but that it does not have as an element the use, attempted use, or threatened use of physical force against the person of another.  It follows, he argues, that the New Mexico offense of aggravated assault with a deadly weapon under N.M. Stat. Ann. § 30-3-2(A) is not categorically a crime of violence.

_____

[6] Whether New Mexico would prosecute someone for aggravated assault with a deadly weapon where the underlying assault is based on the use of insulting language is questionable.  New Mexico has three uniform jury instructions on assault under N.M. Stat. Ann. § 30-3-1: (1) assault by attempted battery (UJI 14-301 NMRA); (2) assault by threat or menacing conduct (UJI 14-302 NMRA); and (3) assault either by attempted battery or by threat or menacing conduct (UJI 14-303 NMRA).  The committee commentary to UJI 14-301 notes that N.M. Stat. Ann. § 30-3-1 contains a third type of assault—assault by the use of insulting language—but explains that "[t]he elements of this type of assault have never been included in the UJI assault instructions, for three reasons."  UJI 14-301 NMRA committee cmt. (1998).  One reason is that "the elements of this offense would not be used to support an aggravated assault; therefore, this type of assault would not be a necessarily included offense."  *Id*.  The parties dispute whether Mr. Maldonado must show there is a realistic probability of prosecution for aggravated assault with a deadly weapon where the underlying assault is committed through the use of insulting language.  We need not resolve this dispute, however, because we ultimately conclude that aggravated assault with a deadly weapon under New Mexico law involves the threatened use of physical force regardless of how the underlying assault is committed.

In focusing on the different methods of committing simple assault, Mr. Maldonado ignores the other key element of aggravated assault under N.M. Stat. Ann. § 30-3-2(A), namely that the assault is committed "with a deadly weapon." We may look to state law for guidance in interpreting what proof is necessary for this element. *See Zuniga-Soto*, 527 F.3d at 1122. One source of guidance is New Mexico's uniform jury instructions. *See, e.g., Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004) (looking to New Mexico uniform jury instructions to determine proof necessary to find defendant guilty of being an "accessory" to second-degree murder); *Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1080 (10th Cir. 2010) (looking to New Mexico uniform jury instructions to determine proof necessary to find employee was acting within the scope of her employment). When adopted by the New Mexico Supreme Court, New Mexico's uniform jury instructions are mandatory and presumptively correct. *State v. Wilson*, 867 P.2d 1175, 1177, 1178 (N.M. 1994).

New Mexico has three uniform jury instructions on aggravated assault with a deadly weapon. *See* UJI 14-304, 305, 306 NMRA (2000). While these instructions describe different theories of the underlying simple assault,[7] all have as a required element that "[t]he defendant *used* a . . . deadly weapon." *Id.* (emphasis added). "It is the *use* of a deadly weapon that raises an assault to an aggravated assault not an

___

[7] Instruction 14-304 sets out the elements of aggravated assault under a theory of attempted battery; instruction 14-305 sets out the elements under a theory of threat or menacing conduct; and instruction 14-306 sets out the elements under both theories (to be used when the evidence would support either theory).

intent to injure." *State v. Cruz*, 525 P.2d 382, 384 (N.M. Ct. App. 1974) (emphasis added).

The uniform jury instructions do not define the term "use." So "we look to the 'ordinary, contemporary, and common' meaning[] of the word[] used." *United States v. Romero-Hernandez*, 505 F.3d 1082, 1087 (10th Cir. 2007) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). As the Supreme Court recently stated in *Voisine v. United States*, 136 S. Ct. 2272, 2278 (2016),

> [d]ictionaries consistently define the noun "use" to mean the "act of employing" something. Webster's New International Dictionary 2806 (2d ed. 1954) ("[a]ct of employing anything"); Random House Dictionary of the English Language 2097 (2d ed. 1987) ("act of employing, using, or putting into service"); Black's Law Dictionary 1541 (6th ed. 1990) ("[a]ct of employing," "application").

*See also id.* at 2283 (Thomas, J., dissenting) ("To 'use' something, in other words, is to employ the thing for its instrumental value, i.e., to employ the thing to accomplish a further goal.").

"[I]n an actual use case . . . , the jury must find, among other elements, that an object was actually used as a weapon and that it was capable of causing the wounds described in the statute." *State v. Nick R.*, 218 P.3d 868, 876 (N.M. 2009). Mr. Maldonado is thus mistaken in his premise that insulting someone while merely possessing a deadly weapon[8] is sufficient to constitute aggravated assault with a

---

[8] Under New Mexico law, "[a] person is in possession of [an object] when, on the occasion in question, he knows what it is, he knows it is on his person or in his presence and he exercises control over it." UJI 14-130 NMRA.

11

deadly weapon under New Mexico law. *See* Aplt. Br. at 2 ("[T]he New Mexico offense [of assault with a deadly weapon] fails the element-by-element test, because it can be committed by using insulting language while possessing a deadly weapon . . . ."). Rather, the perpetrator of an aggravated assault with a deadly weapon must employ the deadly weapon in committing the assault.

New Mexico defines "deadly weapon" as "any firearm . . . ; or any weapon which is capable of producing death or great bodily harm . . . ; or any other weapons with which dangerous wounds can be inflicted." N.M. Stat. Ann. § 30-1-12(B). Employing a weapon that is capable of producing death or great bodily harm or inflicting dangerous wounds in an assault necessarily threatens the use of physical force, i.e., "force capable of causing physical pain or injury to another person," *Johnson*, 559 U.S. at 140. We therefore conclude that aggravated assault with a deadly weapon under N.M. Stat. Ann. § 30-3-2(A) is categorically a crime of violence under U.S.S.G. § 2L1.2.[9]

The district court did not err in increasing Mr. Maldonado's base offense level under U.S.S.G. § 2L2.1 to account for his having a prior conviction for a crime of violence. And Mr. Maldonado does not dispute the attribution of criminal history points, which required that the increase be 16 levels. The district court therefore

---

[9] Mr. Maldonado asks us to follow the Sixth Circuit's decision in *United States v. Rede-Mendez*, 680 F.3d 552, 560 (6th Cir. 2012), which came to the opposite conclusion. We are not persuaded by that circuit's analysis because it did not consider the import of New Mexico's requirement that the deadly weapon be actively employed in committing the assault.

12

calculated the guidelines range properly and imposed a sentence that was procedurally reasonable.

We affirm the sentence imposed by the district court.