FILED
United States Court of Appeals
Tenth Circuit

July 8, 2022

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

TENACE CIRCUIT

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEANDRE ANTONIO HOPKINS,

    Defendant - Appellant.

No. 20-5086
(D.C. Nos. 4:16-CV-00649-JHP-FHM
& 4:12-CR-00050-GKF-3)
(N.D. Okla.)

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

Before **HOLMES**, **BACHARACH**, and **MORITZ**, Circuit Judges.

Proceeding pro se,[1] Deandre Hopkins requests a certificate of appealability

("COA") primarily to appeal from the district court's denial of his authorized,

second or successive motion filed pursuant to 28 U.S.C. § 2255.  Exercising

jurisdiction under 28 U.S.C. § 1291, we **deny** Mr. Hopkins a COA and **dismiss**

this matter.

---

[*]    This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

[1]    Because Mr. Hopkins litigates this matter pro se, we construe his filings liberally but do not act as his advocate. *See United States v. Parker*, 720 F.3d 781, 784 n.1 (10th Cir. 2013) (citing *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008)).

# I

## A

In 2012, Mr. Hopkins was charged in a superseding indictment in federal court with the following charges, among others, relating to a string of robberies in the Tulsa, Oklahoma, area: Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 ("Count One"); Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 ("Counts Five and Seven"); Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("Count Six"); and Using, Carrying, Brandishing and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) ("Count Eight").[2] *See* R., Vol. I, at 42–48, 52–55 (Superseding Indictment, filed Jul. 11, 2012).

Both the superseding indictment and the jury instructions made clear that the predicate "crime[s] of violence" for Counts Six and Eight were, respectively, Counts Five and Seven, the Hobbs Act robberies.[3] *See* R., Vol. I, at 53, 55; *id.* at

---

[2]    "The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining."  18 U.S.C. § 1951(b)(1).

[3]    Notably, Counts Five and Seven charge Mr. Hopkins with the substantive offense of Hobbs Act robbery, and not with attempted robbery or conspiracy to commit robbery (as in Count One).  *See* R., Vol. I, at 52, 54

323 (Jury Instrs., filed Feb. 15, 2013).

On February 15, 2013, a jury convicted Mr. Hopkins on the five counts noted above. On May 28, 2013, the district court sentenced Mr. Hopkins to a total of 544 months' imprisonment: 160 months for each of Counts One, Five, and Seven, all to run concurrently; 84 months for Count Six, to run consecutively; and 300 months for Count Eight, to run consecutively. Mr. Hopkins appealed from the district court's judgment imposing these convictions, but a panel of our Court affirmed the district court's judgment. *See United States v. Hopkins* ("*Hopkins I*"), 608 F. App'x 637 (10th Cir. 2015) (unpublished).

## B

In 2016, Mr. Hopkins, appearing pro se, filed his first § 2255 motion, raising twenty-four separate claims. *See United States v. Hopkins* ("*Hopkins II*"), 797 F. App'x 401, 402 n.1 (10th Cir. 2019) (unpublished). Among his numerous claims, Mr. Hopkins argued that his appellate counsel was ineffective for failing to challenge his § 924(c) convictions in light of *Rosemond v. United States*, 572 U.S. 65 (2014), which had been decided during the pendency of *Hopkins I*.[4]

---

(alleging, in Counts Five and Seven, that Mr. Hopkins "knowingly, willfully and intentionally obstruct[ed], delay[ed] and affect[ed] interstate commerce . . . by robbery").

[4]     As the *Hopkins II* panel explained, the Supreme Court in *Rosemond* "held that a defendant cannot be convicted of aiding and abetting a § 924(c) violation unless he has advance knowledge that one of his confederates will carry a firearm and that a trial court errs by giving an aiding-and-abetting jury

Effectively, Mr. Hopkins argued that his § 924(c) convictions were premised on aiding-and-abetting liability; the trial court had given an erroneous instruction in light of *Rosemond*; and appellate counsel's failure to raise the *Rosemond* issue amounted to ineffective assistance.

On July 27, 2017, the district court denied Mr. Hopkins's motion and also denied him a COA. In doing so, the district court found unpersuasive Mr. Hopkins's *Rosemond* argument. While the district court agreed with Mr. Hopkins that he "could not be convicted for aiding and abetting a § 924(c) violation under *Rosemond*," it found any instructional error harmless because Mr. Hopkins "was properly convicted of aiding and abetting a § 924(c) violation under *Pinkerton v. United States*."[5] R., Vol. VI, at 108 (Dist. Ct. Order, entered Jul. 27, 2017). More specifically, in light of the facts of Mr. Hopkins's case, the district court concluded it was "entirely foreseeable that one or more of [Mr. Hopkins's] accomplices would bring a firearm to . . . [a] robbery and brandish it in furtherance thereof." *Id.* at 109. Thus, the court rejected Mr. Hopkins's argument

instruction that fails to account for the advance-knowledge requirement." *Hopkins II*, F. App'x at 402 (citing *Rosemond*, 572 U.S. at 77–78, 81).

[5]     "The *Pinkerton* doctrine holds each member of a conspiracy legally responsible for the reasonably foreseeable crimes of fellow conspirators committed in furtherance of the conspiracy." *United States v. Wardell*, 591 F.3d 1279, 1291 (10th Cir. 2009) (citing *Pinkerton v. United States*, 328 U.S. 640, 647 (1946); *United States v. Hernandez*, 509 F.3d 1290, 1295 (10th Cir. 2007); *United States v. Russell*, 963 F.2d 1320, 1322 (10th Cir. 1992)).

that his appellate counsel was ineffective for failing to raise a *Rosemond* claim.

## C

Mr. Hopkins took no action in relation to the district court's denial of his § 2255 motion until "[n]early two years later." *Hopkins II*, 797 F. App'x at 402. In May 2019, Mr. Hopkins filed a motion styled, "Motion to Reopen, and/or Relief from Judgement [sic], Pursuant to Fed. R. Civ. P. 60(b)," broadly challenging the district court's original denial of his § 2255 motion and contending that the court had applied incorrect precedent and otherwise erred in denying his ineffective assistance of appellate counsel claim based on *Rosemond*. R., Vol. VI, at 110–15 (Mot. Pursuant to Rule 60(b), filed May 28, 2019). By minute order, the district court summarily denied Mr. Hopkins's Rule 60(b) motion and subsequently denied his request for a COA. *See id.* at 134 (Minute Order, entered June 4, 2019); *see also Hopkins II*, 797 F. App'x at 403.

Mr. Hopkins appealed, and a panel of our Court concluded that his Rule 60(b) motion should have been dismissed as an unauthorized second or successive § 2255 motion. *See Hopkins II*, 797 F. App'x at 403. Particularly, the panel reasoned that Mr. Hopkins's Rule 60(b) motion "amount[ed] to a second or successive § 2255 motion" because, "at bottom, [it was] a merits-based attack on the district court's rejection of the *Rosemond* claim he raised in his § 2255 motion." *Id.* And because this Rule 60(b) motion amounted to an unauthorized, second or successive § 2255 motion, "the district court lacked jurisdiction to

5

consider it and should have . . . dismissed it." *Id.* at 404.

Thus, the panel denied Mr. Hopkins a COA, dismissed his appeal, and instructed the district court to vacate its denial order and either "dismiss the motion for lack of jurisdiction or . . . transfer it to this [C]ourt." *Id.* Following the panel's mandate, the district court vacated its previous denial of the Rule 60(b) motion and dismissed it for lack of jurisdiction. *See* Order, *United States v. Hill*, No. 12-CR-00050-GKF (N.D. Okla. Apr. 7, 2020), Doc. No. 846 (vacating district court's previous denial of Mr. Hopkins's Rule 60(b) motion and dismissing it for lack of jurisdiction); *see also* R., Vol. VII, at 31 (district court docket sheet showing dismissal of Mr. Hopkins's Rule 60(b) motion).[6] Mr. Hopkins did not, however, initiate further action to pursue his *Rosemond*-based claim.

**D**

On April 24, 2020, Mr. Hopkins sought permission from this Court to file a successive § 2255 motion. A panel granted Mr. Hopkins permission to file such a motion to challenge his § 924(c) convictions and sentences on the basis of the Supreme Court's decision in *United States v. Davis*, --- U.S. ----, 139 S. Ct. 2319 (2019). *See* Order at 2, *In re: Deandre Antonio Hopkins*, No. 20-5044 (10th Cir.

---

[6] We take judicial notice of certain relevant district court documents that were not included in the record compiled for this appeal. *Cf. Bunn v. Perdue*, 966 F.3d 1094, 1096 n.4 (10th Cir. 2020) ("Some of the relevant . . . filings in district court . . . were not included in the record on appeal, but they are accessible from the district court docket. We may therefore take judicial notice of the filings.").

May 27, 2020).

Davis "announced a new rule of constitutional law that the [Supreme] Court made retroactive to cases on collateral review . . . ." Id. § 924(c) proscribes using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime" or possessing a firearm "in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A). The statute defines "crime of violence" as "an offense that is a felony and . . . (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another [i.e., the force or elements clause], or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [i.e., the residual clause]." Id. § 924(c)(3)(A)–(B). Davis invalidated § 924(c)(3)(B)—the residual clause—concluding that it was unconstitutionally vague, which left § 924(c)(3)(A), the force or elements clause, as the only applicable definition of "crime of violence" under the statute. See Davis, 139 S. Ct. at 2336.

Using the Supreme Court's Davis decision, Mr. Hopkins subsequently filed his second or successive § 2255 motion, arguing that Davis's invalidation of § 924(c)'s residual clause rendered his own § 924(c) convictions unconstitutional. However, on July 20, 2020, the district court dismissed or, in the alternative, denied Mr. Hopkins's second or successive § 2255 motion and did not issue a COA. See R., Vol. VII, at 33–38 (Dist. Ct. Order, entered Jul. 20, 2020). In

pertinent part, the court concluded that, because "courts have consistently held that a Hobbs Act robbery is a crime of violence under [§] 924(c)'s elements clause," Mr. Hopkins "fail[ed] to show by a preponderance of the evidence that his conviction rests on § 924(c)'s unconstitutional residual clause." *Id.* at 37. Accordingly, the court dismissed Mr. Hopkins's motion because it could not "rely on the Supreme Court's decision in *Davis*" and, therefore, did not "satisfy the requirements of 28 U.S.C. § 2255(h)." *Id.* Alternatively, the court denied the motion on the merits "for the same reasons because he fails to show it is more likely than not that his [§] 924(c) conviction rests on the unconstitutional residual clause." *Id.*

**E**

Shortly thereafter, on August 3, 2020, Mr. Hopkins filed in the district court a motion to reconsider its decision pursuant to Federal Rule of Appellate Procedure 4(c)(1) and Federal Rule of Civil Procedure 60(b)(6). Specifically, Mr. Hopkins asked the court to reopen and re-enter its July 27, 2017, judgment, which rendered final the rejection of his *first* § 2255 motion, so that he could file a timely notice of appeal challenging that ruling.[7] *See id.* at 40–49 (Pet.'s Mot. Pursuant to Fed. R. App. P. 4(c)(1) & Fed. R. Civ. P. 60(b)(6), filed Aug. 3, 2020). By way of this motion, Mr. Hopkins effectively tried to "reset[]" the time

---

[7]    This motion was dated July 21, 2020, and was entered in the district court's docket on August 3, 2020.

8

period for appealing from the district court's denial of his first § 2255 motion, arguing he had timely placed his notice of appeal in the prison mail system in 2017, but that the notice and envelope were returned to him, undelivered, in June 2020, three years later. *Id.* at 40; *see also id.* at 40–42. Mr. Hopkins attached a sworn declaration to his motion and contended that he had established good cause to excuse this delay and reopen the district court's July 2017 order and judgment denying his first § 2255 motion. *See id.* at 42, 47.

On August 11, 2020, the district court denied Mr. Hopkins's motion. *See id.* at 50–54 (Dist. Ct. Order, dated Aug. 11, 2020). The court explained that, under the prison mailbox rule, an inmate can establish timely filing of a notice of appeal "by either (1) alleging and proving that he . . . made timely use of the prison's legal mail system . . ., or (2) . . . by timely use of the prison's regular mail system in combination with a notarized statement or a declaration under penalty of perjury of the date on which the documents were given to prison authorities and attesting that postage was prepaid." *Id.* at 53 (quoting *Prince v. Philpot*, 420 F.3d 1158, 1166 (10th Cir. 2005)). The district court found that Mr. Hopkins failed to make either of these showings and denied the motion.

\* \* \*

Mr. Hopkins submitted his timely notice of appeal, which was filed on September 8, 2020. *Id.* at 55 (Pet.'s Notice of Appeal, filed Sept. 8, 2020). He requests a COA to proceed further. In his opening brief, Mr. Hopkins centers his

arguments on the district court's disposition of his authorized, second or successive § 2255 motion. *See* Aplt.'s Opening Br. at 3–10. Yet construed liberally, Mr. Hopkins's filings also conceivably seek a COA to challenge the district court's denial of his August 3, 2020, Rule 60(b)(6) motion, in which Mr. Hopkins invoked the prison mailbox rule with the objective of getting the court to reenter its judgment so that he could appeal from the court's denial of his *first* § 2255 motion. However, in his opening brief, Mr. Hopkins reargues only the merits of his first § 2255 motion, which recall was a *Rosemond*-based ineffective assistance of appellate counsel claim. *See id.* at 10–14.

## II

Mr. Hopkins mailed a notice of appeal that was filed on September 8, 2020. *Id.* at 55. He must obtain a COA to appeal from the district court's denial of his § 2255 motion. *See* 28 U.S.C. § 2253(c)(1)(B); *Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006) ("A COA is a jurisdictional pre-requisite to our review." (citing *Miller-El v. Cockrell*, 537 U.S. 322, 323 (2003))). We may grant a COA only if Mr. Hopkins "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In its seminal decision, *Slack v. McDaniel*, the Supreme Court shed light on the showing required to secure a COA:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes

10

somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

529 U.S. 473, 484 (2000).

More specifically, because the COA inquiry "is not coextensive with a merits analysis," the "only question" at the COA stage "is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution . . . or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El*, 537 U.S. at 327). In fact, if a court of appeals "first decid[es] the merits of an appeal, and then justif[ies] its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction." *Id.* (quoting *Miller-El*, 537 U.S. at 336–37). Notably, in the Rule 60(b) context, a "federal habeas court's ruling on procedural issues . . . should be treated as [based on] a true 60(b) motion," and thus "a COA is required to appeal from the denial" of relief. *Spitznas v. Boone*, 464 F.3d 1213, 1216, 1218 (10th Cir. 2006).

### III

Mr. Hopkins's request for a COA centers on the district court's denial of his authorized, successive § 2255 motion, purportedly based on *Davis*. When construed liberally (in truth, generously), *see, e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), Mr. Hopkins's notice of appeal conceivably also could be read as seeking a COA to challenge the district court's denial of his August 3, 2020, Rule 60(b)(6) motion—i.e., the order which dealt with Mr. Hopkins's claim that he intended to timely appeal his first § 2255 motion in 2017 but the notice of appeal was lost in the mail and returned to him only in June 2020. In any event, we deny Mr. Hopkins a COA and dismiss this matter.

### A

Mr. Hopkins seeks a COA relating to the district court's dismissal of his authorized, successive § 2255 motion. As narrated above, 18 U.S.C. § 924(c) proscribes using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime" or possessing a firearm "in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A). After the Supreme Court issued its decision in *Davis*, the statutory definition of "crime of violence" was effectively limited to the force or elements clause of § 924(c)(3)—that is, "an offense that is a felony and . . . (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A); *see Davis*, 139 S. Ct. at 2336.

12

Mr. Hopkins contends that, in light of *Davis*, his § 924(c) convictions cannot stand because Hobbs Act robbery is not a "crime of violence." *See* Aplt.'s Opening Br. at 3–10. As Mr. Hopkins reasons, with Hobbs Act robbery failing to qualify under the elements clause, and with *Davis* having rendered the statute's residual clause constitutionally infirm, his § 924(c) convictions lack a predicate "crime of violence" and, therefore, those convictions, and their attendant sentences, must be vacated. *See id.* at 3–7 (arguing that Hobbs Act robbery is not categorically a crime of violence under the elements clause); *id.* at 7–10 (explaining that the residual clause is unconstitutional).

Unfortunately for Mr. Hopkins, his argument stands on an incorrect legal premise: that is to say, he relies on the premise that Hobbs Act robbery is not a crime of violence under the elements clause, § 924(c)(3)(A). However, we have held in precedential authority to the contrary—specifically, that Hobbs Act robbery *is*, categorically, a crime of violence under the elements clause. In *United States v. Melgar-Cabrera*, we were faced with this precise question—i.e., whether Hobbs Act robbery is a crime of violence under § 924(c)'s elements clause—and we resolved it in no uncertain terms, by employing the categorical approach to "conclu[de] that Hobbs Act robbery is a crime of violence under the elements clause of § 924(c)(3)." 892 F.3d 1053, 1060 n.4 (10th Cir. 2018); *see United States v. Jefferson* ("*Jefferson I*"), 911 F.3d 1290, 1296 (10th Cir. 2018) (observing that *Melgar-Cabrera* "decided Hobbs Act robbery is categorically a

13

'crime of violence' under § 924(c)(3)(A)'s elements clause because the clause requires the use of violent force, i.e., force capable of causing physical pain or injury to another person, and the force element in Hobbs Act robbery can be satisfied only by violent force"), *cert. granted, judgment vacated in part on other grounds*, 140 S. Ct. 861 (2020); *United States v. Jefferson* ("*Jefferson II*"), 989 F.3d 1173, 1175 n.1 (10th Cir. 2021) (discussing "our holding in" *Melgar-Cabrera* "that Hobbs Act robbery is categorically a crime of violence under 18 U.S.C. § 924(c)(3)(A)").

Thus, in practical terms, *Davis*'s admittedly significant impact on § 924(c)'s definition of "crime of violence"—its invalidation of the residual clause—is nevertheless largely irrelevant to Mr. Hopkins's circumstances in light of the well-established principle that the predicate crime underlying his § 924(c) convictions, i.e., Hobbs Act robbery, qualifies as a "crime of violence" under the alternate, force or elements clause, § 924(c)(3)(A).[8]

---

[8]　　Additionally, we rejected several arguments in *Melgar-Cabrera* that are substantially similar to some arguments made by Mr. Hopkins. The defendant in *Melgar-Cabrera* made two arguments "for why Hobbs Act robbery fail[ed] to constitute a crime of violence under § 924(c)(3)(A)": (1) that the "force" required to commit Hobbs Act robbery need not be "violent force," whereas the "physical force" required for § 924(c)(3)(A) must be "violent force," and (2) that "unlawfully taking a victim's property against his or her will 'by means of . . . fear of injury' does not require the attempted or threatened use of physical force." *Melgar-Cabrera*, 892 F.3d at 1061 (omission in original). As to the first argument, we "h[e]ld that physical force as used in § 924(c)(3)(A) 'means *violent* force—that is, force capable of causing physical pain or injury to another person.'" *Id.* at 1064 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). And

Subsequent caselaw published after *Melgar-Cabrera* has only further undercut Mr. Hopkins's position.[9]  *Cf. United States v. Walker*, 990 F.3d 316, 325, 325 n.11 (3d Cir. 2021) (noting that "[e]very court of appeals to consider the issue has held that Hobbs Act robbery is . . . a crime of violence for purposes of [the force or elements clause of] § 924(c)"; agreeing with this conclusion; and citing, in addition to *Melgar-Cabrera*, published caselaw from the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits); *see also United States v. Nguyen*, 845 F. App'x 791, 792 (10th Cir. 2021) (unpublished) ("Mr. Nguyen argues that Hobbs Act robbery does not constitute a crime of violence under 18

---

that the "force element" in the Hobbs Act robbery statute "can *only* be satisfied by violent force."  *Id.* at 1065 (emphasis added).  As for the second argument, we determined that our decision in *United States v. Ontiveros*, 875 F.3d 533 (10th Cir. 2017), "foreclosed" any argument that "committing Hobbs Act robbery by putting someone in fear of injury does not necessarily constitute the threatened use of physical force because it can be done through indirect force."  *Melgar-Cabrera*, 892 F.3d at 1066.  Our prior rejection of this second argument is particularly important here, where Mr. Hopkins makes an analogous—and analogously unavailing—argument; he avers Hobbs Act robbery does not categorically qualify as a crime of violence because it can be committed "by causing fear of future injury to property, which does not require 'physical force'" within § 924(c)'s meaning.  Aplt.'s Opening Br. at 3–4.

[9]    In June 2022, the Supreme Court held in *United States v. Taylor*, --- U.S. ----, 142 S. Ct. 2015, 2022 WL 2203334 (2022), that *attempted* Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A).  Because, as we previous noted, *see supra* note 3, Mr. Hopkins was not charged with *attempted* Hobbs Act robbery in Counts Five and Seven, *Taylor*'s holding is irrelevant to Mr. Hopkins's request for a COA.  *Cf. Taylor*, 2022 WL 2203334, at *4 ("Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause.").

15

U.S.C. § 924(c)(3). He bases this argument on the Supreme Court's recent opinion in *United States v. Davis*, . . . . In our view, however, any reasonable jurist would reject this argument because Hobbs Act robbery clearly satisfies the elements clause in § 924(c)(3)(A).").

For example, in *Jefferson I*, the defendant "appear[ed] to suggest the taking of property via 'fear of injury' d[id] not involve physical force and therefore Hobbs Act robbery does not contain a force element"—and, more specifically, that "interpret[ing] the phrase 'fear of injury' as requiring the 'threatened use of physical force' would render the phrase impermissibly superfluous because the statute already prohibits taking property from the victim against his will via 'threatened force.'" *Jefferson I*, 911 F.3d at 1298. We found this position "too ambitious," and incompatible with *Melgar-Cabrera*. *Id.* Unimpressed with the defendant's statutory interpretation arguments, we observed that, in the case of the Hobbs Act, the statute "prohibits . . . robbery by 'threatened force,' which overlaps with robbery by 'fear of injury,'" and it also "prohibits robbery by 'actual . . . force,' which overlaps with robbery by 'violence.'" *Id.* at 1298–99 (second omission in original). Thus, "[t]aken in context, one thing is clear": by way of the Hobbs Act, "Congress sought to prohibit the taking of property from a victim against his will by actual or threatened use of physical force"—and "[t]hat satisfies § 924(c)(3)(A)." *Id.*

Mr. Hopkins cites *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019),

to further advocate for his position.  Aplt.'s Opening Br. at 6–7.  But this line of attack also fails.  We already have stated that *Bowen* does not call into question *Melgar-Cabrera*'s holding that Hobbs Act robbery is categorically a crime of violence.  *See Jefferson II*, 989 F.3d at 1175 n.1.  In *Jefferson II*, the defendant "argue[d] . . . *Bowen* . . . [was] an intervening decision that overruled our holding in . . . *Melgar-Cabrera* . . . that Hobbs Act robbery is categorically a crime of violence under 18 U.S.C. § 924(c)(3)(A)."  *Id.*  Our Court noted that, assuming that the issue was within the scope of the remand at issue, "*Bowen* had no such effect."  *Id.*  We explained that, "[i]n *Bowen*, we held the federal witness-retaliation statute . . . does not qualify as a crime of violence under § 924(c)(3)(A) because it includes witness retaliation through non-violent property damage," such as "spray painting a car."  *Id.* (emphasis omitted).  "But the same is not true of Hobbs Act robbery," which "necessarily entails the use or threatened use of violent force against a person or property."  *Id.* (emphasis omitted).  In other words, "[w]ithout violent force, there is no Hobbs Act robbery and no 'crime of violence.'"  *Id.*; *see also Nguyen*, 845 F. App'x at 792–93 (applying *Melgar-Cabrera* to hold that Hobbs Act robbery could "only be satisfied by violent force" and is a crime of violence under § 924(c)(3)(A) (quoting *United States v. Nguyen*, 744 F. App'x 550, 552 (10th Cir. 2018) (unpublished))).  Accordingly, *Bowen* did not disturb *Melgar-Cabrera*, and Mr. Hopkins's reliance on the case is unavailing.

Thus, in light of *Melgar-Cabrera* and subsequent, relevant caselaw, Mr.

17

Hopkins has not—and cannot—show that reasonable jurists would debate or find incorrect the district court's dismissal of his second or successive § 2255 motion. Accordingly, a COA is not warranted as to this issue.

**B**

Construing Mr. Hopkins's notice of appeal liberally, it is conceivable that Mr. Hopkins also seeks a COA with respect to the district court's denial of his August 3, 2020, Rule 60(b)(6) motion. However, insofar as he does seek a COA on this ground, Mr. Hopkins has completely failed to show that reasonable jurists could debate the correctness of the district court's decision. Accordingly, we deny any such COA request.

Specifically, along with his notice of appeal, Mr. Hopkins attached a document styled "Appellant's Show Cause Motion Pursuant to the 'Prison Mailbox' Rule And Fed. R. App. P. 4(c)(1)." R., Vol. VII, at 56–58 (Ex. 1 to Notice of Appeal, filed Sept. 28, 2020). He also attached a supporting declaration pursuant to 28 U.S.C. § 1746 and the purported envelope in which the original notice of appeal was mailed back in 2017. *Id.* at 59–62 (Pet.'s Decl., dated Jul. 21, 2020). Both of these documents were provided to the district court alongside his August 3, 2020, Rule 60(b)(6) motion. *See id.* at 40–49. Effectively, Mr. Hopkins largely copied and pasted his Rule 60(b)(6) motion, restyled it as a "Show Cause" motion, and attached it, along with the declaration he previously sent to the district court, to the notice of appeal that he mailed.

18

However, critically, Mr. Hopkins offers no discussion of the district court's denial of his Rule 60(b)(6) motion in his opening brief. *See* Aplt.'s Opening Br. at 10–14. Indeed, Mr. Hopkins in his opening brief utters not one word about the district court's denial of this motion. Accordingly, he has waived any arguments challenging this denial. It is well-established that "[i]ssues not raised in [an appellant's] opening brief are deemed abandoned or waived," and "[t]his briefing-waiver rule applies equally to arguments that are inadequately presented in an opening brief." *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) (first quoting *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004); and then quoting *United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019)). We likewise hold pro se litigants to this standard. *See United States v. Banks*, 884 F.3d 998, 1024 (10th Cir. 2018) ("We aren't required to fill in the blanks of a litigant's inadequate brief."); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.").

In pursuing a COA, Mr. Hopkins would need to demonstrate how or why the district court erred in its denial of the Rule 60(b)(6) motion. That he has not done. *Cf. Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong. Recitation of a tale of apparent injustice may assist in that task, but it

19

cannot substitute for legal argument. . . . [Appellant] utterly fails . . . to explain what was wrong with the reasoning that the district court relied on in reaching its decision.  As a result, we . . . affirm[] the judgment below."); *Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir. 1995) ("Because the appellant comes to the court of appeals as the challenger, he bears the burden of demonstrating the alleged error and the precise relief sought.  A court of appeals is not required to manufacture an appellant's 'argument on appeal when it has failed in its burden to draw our attention to the error below.'" (citations omitted) (quoting *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1244 (10th Cir. 1989))).  Given Mr. Hopkins's total failure to discuss the district court's denial of his Rule 60(b)(6) motion in his opening brief, insofar as Mr. Hopkins seeks a COA to challenge this denial, we deny it.

Notably, instead of addressing the court's procedural denial of his 60(b)(6) motion, Mr. Hopkins focuses in his opening brief on re-litigating the merits of his claim of ineffective assistance of appellate counsel, based on counsel's failure, in light of *Rosemond*, to challenge his convictions—a theory Mr. Hopkins brought in his first § 2255 motion.  *See* Aplt.'s Opening Br. at 10–14 (arguing in support of the applicability of *Rosemond* to overturn his convictions).  To the extent that this line of argument was intended to bolster Mr. Hopkins's conceivable COA request regarding the court's denial of his Rule 60(b)(6) motion, it does not avail Mr. Hopkins, in light of his complete failure to challenge the procedural ground for the

20

district court's denial of that motion. But it is perhaps more likely that Mr. Hopkins tacitly seeks to resurrect the *Rosemond* merits attack of his first § 2255 motion. If so, we decline to consider it. As we made clear in *Hopkins II*, such an attack would effectively constitute a second or successive § 2255 motion for which Mr. Hopkins has not properly sought authority from this Court. *See Hopkins II*, 797 F. App'x at 403. Mr. Hopkins had the opportunity to seek such authority after the district court dismissed his May 2019 Rule 60(b) motion concerning his *Rosemond* claim, and he took no further action. We decline to construe this argument in his opening brief as a motion seeking such authority now. *Cf. United States v. Nelson*, 465 F.3 1145, 1149 (10th Cir. 006) ("treat[ing] [prisoner's] notice of appeal and appellate brief as an implied application to this court for leave to file a second § 2255 motion").

In sum, we recognize that it is conceivable that Mr. Hopkins also seeks a COA to challenge the district court's denial of his Rule 60(b)(6) motion, invoking the prison mailbox rule. If so, Mr. Hopkins cannot prevail because he has waived any argument challenging the correctness of the court's denial by omitting it from his opening brief. Therefore, it ineluctably follows that Mr. Hopkins cannot demonstrate that reasonable jurists could debate the correctness of the court's Rule 60(b)(6) ruling, nor show that a COA is warranted.

**IV**

For the foregoing reasons, we **DENY** Mr. Hopkins's request for a COA and

**DISMISS** this matter.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge